OPINION of the Court, by
Judge LoG~tN.-
Th~& is a suit in chancery, brought for the purpose of vaca .ting a d~éd of conveyance, and procuring a re-division to a moiety of 200 acres of land, or for generalyelief.
Alexander Brec.kenridg~e passed his bond. for 200 acres of land, which by sundry assignments came into the hands of John Netherton, who transferred the same to John Mathews and Henry Netherton. FI~nry Ne-th~rton, in June 1799, assigned his right and title in said bond to Owen Gwathmey, the appdlee; and in the February following an assignment of: the other moiety is endorsed from Mathews, the other assignee, t~ one Mackie, who, in December 1801, assigned his right to Arterburn, ~he appellant. .
Thebill alleges that the joint assignees, Mathews and~ Henry N~therton, had agreed on the manner of di *307 viding the land, so as to lay off for each 100 acres in a square, crossing Harrod’s creek, and which would give land of equal quality ; and that the complainant had purchased under this impression for a valuable consideration. That Gwathmey, without his knowledge or consent, had obtained from the devisee of B'-et kenridge a deed for a moiety of the 20 > act rs, laid off in a quite different manner from that which had been, agreed on by the joint assignees. So a:> to throw the whole of the creek, with sterile cliffs, to the complainant ; and procure for the appellee a “ fine level and fertile tract.'’ And by an amendment to the bill, it is alleged that since filing the original bill the defendant Gwathmey has conveyed the said 100 acres of land to Jesse Yeager, who is charged with a knowledge of the complainant’s claim before he bought or accepted a conveyance mf said land.
Gwathmey in his answer denies that he knew of any understanding or agreement between John Mathews and Henry Netherton, as joint owners of the assigned obligation, with respect to the mode of dividing the said 200 acres of land between them ; but states, that before he purchased of Henry Netherton, the said Henry, together with John Netherton, who sold to him, took him the said defendant to the southeast corner of the land, and told him that that was part of the land which they wished to sell to him, and that the land thus offered for sale to said defendant would include the whole of Bell’s improvement; which he alleges to be so situated that no equal division by parallel lines could be made to include it, other than the manner it has been laid off. That except the land at the corner aforesaid, and having seen Bell’s improvement, he had no knowledge of the quality or situation of the tract, only from the information of others ; and that he, agreeably to the information received from the said John and Henry Nether-ton, had the dividing line run, supposing that it was run pursuant to the understanding of the Nethertons ánd Mathews, as well as conformably to the information and sale from the Nethertons to him ; and did accordingly "bbtain a deed of conveyance for a moiety of said tract. That after he had obtained his deed as aforesaid, the appellant applied and also procured á deed for the other moiety of the said 200 acres. That some time there *308 after, and before the commencement of this suit, or any dissatisfaction expressed as to the manner of dividing the land, the complainant and the,defendant had been in treaty for the purchase from the defendant of his said, interest. That the complainant knew of his being about to sell, and several years had elapsed from the date of his deed before he did sell, without complaint (to his knowledge) from the complainant with respect to the manner of division.
The other defendant, Yeager, denies notice of the complainant’s claim, and alleges that he is a bona fide purchaser for a valuable consideration, both by answer and plea.
Before we proceed to an examination of the merits of the case, it may not be improper to notice the state of preparation in which the cause appefxrs.
The defendent Yeager pleads his want of notice of the complainant’s claim, and that he is a purchaser for a valuable consideration. To this plea there was no replication, and we are of opinion that the plea should therefore be taken as true ; the effect of which is only tantamount to the denial in the defendant’s answer, if that were considered as responsive to the bill, without the necessity on the part of the defendant to exhibit his deed in support thereof. The court, therefore, properly dismissed the bill as to the defendant Yeager,
But it becomes a question of farther consideration, as to the decree which should have been pronounced against Gwathmey, the other defendant.
The evidence in the cause is abundant indeed, in establishing #ie manner of dividing the tract of land as alleged in the bill, between Henry Netherton and John Mathews ; and that both Mackie and Arterburn, the appellant, had purchased that interest agreeably to the same mode of division. But it does more, it establishes an entire inequality in the division as made, the one hundred acres being worth about seven dollars per acre, and the other hundred only about one dollar per acre. This striking inequality in the division, would certainly require relief as between the joint assignees of equal moieties, or those claiming under them, unless there be some circumstances in the case applicable to the situation pf the parties which prevent it.
*309 It remains now to examine those circumstances. Gwathrneyiilleges in his answer, that before he purchased he went on the land with John and Henry Nether-ton, both of whom pointed out the southeast corner of the tract as the land offered to him, and represented that it would include Beil’s improvement. This statement in the answer is supported by the evidence in the cause. The inquiry, therefore, arises, whether the Nethertons held such interest at that time as to warrant their representation, and give to Gwathmey an equitable demand on them for the land thus shewn ?
It is in proof that John Mathews, after he had commenced improving the land, to which he had supposed himself entitled under his purchase, but which is within the bounds now claimed by the appellees under Henry Netherton ; and knowing himself, as he swears, that Henry was by contract to have the whole of Bell’s improvement, but which could not be comprehended and at the same time secure to him land agreeably to his expectations, and which alone he had intended to purchase, he therefore re-sold to John Netherton the interest he had purchased from him for less than he gave Netherton for the same.
In this state of things, it is evident from an attentive examination of the evidence in the cause, ówathmey made his purchase.; The assignment to him of Henry Netlierton’s interest, bears date on the 24th of June 1799, and that to Mackie, who sold to Arterburn, the appellant, is on the 11th' of February 1800.
Mackie purchased from John Netherton, and not from Mathews ; so that the assignment from Mathews to him, instead of having been made first to John Ne-1 therton, and then from him to Mackie, in order to place the interest and transfers in their proper light, cannot be permitted to overreach any intermediate act of John, which might have created an equity against himself, while entitled to an undivided moiety in said land.
When holding this interest by purchase from Ma-thfws, John Netherton, with Henry, who held the other moiety, shew and represent the land' to Gwathmey, •which they induce him to purchase, as including Bell’s improvement and the southeastwardly part of the 200 acre tract.
*310 Having thus understood the manner of dividing said 200 acres, as agreed upon betweeli the Netherfóns, ⅜⅛ far as Gwathmty, purchasing under that impression, conformed to their representations in dividing the tract, and in the procurement of his deed ; he acquired an equity against John Netherton, which, after the consummation of his title at law, will protect him against an equity subsequently acquired under the said Nether-ton, unless his promise or representations shall, by the statute of frauds and perjuries, be held void.
Without investiga.ing the legal efficacy of this agreement on John Netherton, with respect to the manner of dividing the 200 acr-s of land, provided this was ft suit to coerce a compliance, it is sufficient that there is a rebutting equity to the relief sought. John Nether-ton, as one of two joint purchasers, possessed the power to fix on the mode of dividing his interest from his co-assignee, which, when executed, deeds passed and accepted, would be beyond the reach of control, if free from fraud and gross mistake and inequality. So much the more so, whe n one of the parties holds as a purchaser, induced and led into the purchase by the representations of the other, who claims the benefit of the purchase upon the terms it was offered, without a knowledge of the effect it might produce in relation to the other. He cannot compensate the! loss of the other, because it would take from him the consideration of his, purchase, as shewn and consented to by the parties interested.
In no other light can we view the assignee of the co-tenant: he occupies his ground, holds only his equity, and cannot possess legal demands beyond the extent of that equity.
We are now led to consider how far, in making the: division of the 200 acres, Gwath ney has conformed to the Biamier pointed out by John Netherton in the purchase ? He was entitled to 100 acres, comprehending the southeast corner of the tract, and Bell’s improvement ; hut it is by inference only that he claims a division of the tract by running across the same westwardly, excluding the creek, because, as he alleges, an equals division by parallel lines cannot be made, so as to throw Bell’s improvement all on one side, in any other than the manner pursued by him.
*311 .It is here to be observed, that, there is no evidence in support of the ide# that parallel lines extended quite across the tiact, a square, or regular figure, was to be adhered, to in the division to be made. The fair presumption, in the absence of such proof, in a case of joint interest, is in favor of an equal division, as nearly as regard to the specified part and given quantity of the tract will permit.
In the case before us, although it would produce considerable difficulty in preserving the best form to each parcel of land, and also include Bell’s improvement, in any other than the mode adopted, yet it cannot be conceded, where circumstances so strongly negative the idea, that the other party intended more than an inclusion of Bell’s improvement. It is on the southwardly end of the tract, and a fine running at right angles east and westwardly across the tract would manifestly have included it, together with the southeast corner, without Stipulations to that effect, if it had been intended that the land was to be thus divided, leaving the creek and northwardly ehd to the other party.
But the improvement is much nigher the southwest corner than an inclusion of it will warrant, and intend the dividing line at right angles to the tract northwardly, crossing the creek, to the northern boundary of the tract. And to secure the whole of- the improvement seems to have been the true object of the agreement, because that and the land there Gwathmey had seen.
Besides, the great inequality in the parcels of land as divided, repels the presumption of form and square figures in the division of joint interests, after securing to the one party the spot specifically named. It is in proof that one tract is worth seven dolíais per acre, whilst the other is only estimated at one dollar per acre. The inequality is too palpable to support the division as made, under the circumstances of acquiescence shewn in the case. Whether the injured party was fully apprised of this great difference in the value of the land when he received his deed, does not appear. It is true he seems to have understood, about or before that period, that his part as laid off was hilly; but it appears that he did not live on it; and the presumption is too violent to be doubted, that he was mistaken in his right, and ought to be relieved, so far as the division exceed *312 ed the necessity of giving 100 hundred acres including the improvement called Bell’s, áfcl has givej&’a still greater benefit to one, to the injury of the other party.
We are therefore of opinion that for this difference in the relative value of so much of the land, Gwathmey should be decreed to pay to the appellant. If Gwath-mey were still the proprietor of the interest he had purchased, a re-division would be proper, having for its object as near an equal and equitable partition of 100 acres to each, as would be consistent with the express stipulation to include the whole of the improvement referred to On one side, and the southeast corner of the 200 acre tract; so far, and so far only, as when regarding these positive stipulations, the one moiety is made moré beneficial to the one party, to the injury of the other, a clear equitable right exists to the latter for redress against the former.
But Gwathmey having passed the legal title to a purchaser for a valuable consideration without notice, musí repair in damages the injury sustained in the division aforesaid by his cotenant; the amount of which will be ascertained from a regard to the principle which,should have been observed as herein mentioned in the division of the land. So far as Gwathmey has obtained land not neeessarily within the meaning and terms of his contract as shewn and represented by both the NethertoUs as herein mentioned, which is of more value than the same quantity that might have been reasonably comprehended within his division, instead of such of superior quality, for the difference between the value of such parcels Gwathmey ought to pay;, provided that the interest he acquired under the express agreement of the parties, when added to that part which in equity he ought to have taken, shall not be exceeded by the value of the land in the other moiety and the compensation to be decreed*
Wherefore it is decreed and ordered that the decree of the circuit court dismissing the complainant’s bill be reversed and set aside, and that the cause be remanded for a decree to be entered conformable to the foregoing opinion, and such other and farther decrees and orders to be made as equity and law may require.
And it is farther decreed and ordered that the appellee Gwathmey do pay to the appellant his costs.